IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-01662-RBJ

GREAT AMERICAN OPPORTUNITIES, INC,

      Plaintiff,

v.

JACOB KENT,

      Defendant.

---

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

---

This matter is before the Court on plaintiff Great American Opportunities, Inc. and defendant Jacob Kent's cross-motions for partial summary judgment. ECF Nos. 37, 39. For the reasons stated herein, the plaintiff's motion is DENIED, and defendant's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Great American Opportunities (GAO) is a Tennessee company in the business of fundraising. ECF No. 1 (Complaint) at ¶2. It facilitates fundraising programing for schools, councils and civic organizations. *Id.* at ¶4. It does this by acting as a wholesaler of products – GAO's customers sell GAO products to fundraise for their organization. *Id.* at ¶4. GAO uses sales representatives who collaborate with fundraising program sponsors in each account. *Id.* at ¶4. Fundraising program sponsors are people like the school principal, administrators, secretaries, teachers and coaches that lead a fundraiser for their organization. *Id.* at ¶17. GAO

runs as many as 25,000 fundraising programs each year for about 16,000 different accounts. *Id.* at ¶12.

In running these programs, GAO develops customer account information such as a customer's fundraising history, what product lines the customer has used, the method of marketing and prize giving, the number of program participants, total sales, net profits, and the future goals of the participating schools and groups. *Id.* at ¶18. Sales representatives develop and document this information. *Id.* at ¶21. The information is stored on a computer server in Tennessee, and GAO maintains several layers of security to protect its data in compliance with the "Payment Card Industry" data security standards. *Id.* at ¶22. GAO states that it also develops strategic business plans, marketing plans, future product roll-outs, and information about the acquisitions of other sales forces and accounts of competitors in fundraising. *Id.* at ¶19. It considers all this information to be trade secrets and valuable confidential information. *Id.* at ¶27.

Jacob Kent is a Colorado citizen and was a sales representative for GAO between October 1999 and December 31, 2015 or January 1, 2016, when he voluntarily resigned. *Id.* at ¶31; ECF No. 8 at ¶46. In 2002 Mr. Kent had entered into an employment agreement in which he acknowledged GAO's requirements that he not disclose trade secrets and other confidential information as a condition of employment. *Id.* at ¶28, 35; Employment Agreement § 5(a). Mr. Kent further agreed that for a period of two years following the date of his resignation, he would not solicit any account, customer, or sponsor of GAO within his assigned territory. *Id.* at ¶38; Employment Agreement § 5(b).

However, GAO learned from other sales representatives that Mr. Kent, at least as of February 24, 2017, was soliciting business from Colorado accounts he formerly serviced as a

GAO employee.  *Id.* at ¶49-50.  GAO sent two letters to Mr. Kent in March 2017 reminding him of his obligations under the Employment Agreement.  However, he continued to solicit GAO customers for his new fundraising business.  *Id.* at ¶53- 56.

For his part Mr. Kent maintains that he was never provided any confidential or trade secret information after his first year with GAO.  ECF No. 44 at 4.  He further states that most of the information GAO argues is confidential is publicly accessible in the Colorado High School Activities Association directory, or by calling or visiting the school, or on GAO's website.  *Id.* Mr. Kent describes the fundraising service provided by his new business as a platform for online donations that does not require student groups to sell products.  *Id.* at 7.  He argues that this is a service not offered by GAO, and that the customers he has contacted had already ceased doing business with GAO because they were looking to move from product sales to an online donation-only platform.  *Id.*

GAO filed its Complaint against Mr. Kent on July 17, 2017.  ECF No. 1.  It brought claims for misappropriation of trade secrets under federal and state law (Counts One and Two), breach of contract (Count Three), tortious interference with contracts (Count Four) and breach of the non-solicitation and non-interference clauses of the contract (Count Five).[1]  On July 12, 2018, Mr. Kent moved for partial summary judgment asking for dismissal of all claims except claims contained in Count Three for breach of the confidentiality provisions of the Employment Agreement.  ECF No. 37.  Mr. Kent contends that the information identified by GAO does not constitute trade secrets or confidential business information, and that even if it did, Mr. Kent never misappropriated such information.  He further claims that the provisions of the Employment Agreement relied upon by Plaintiff are unenforceable under Colo. Rev. Stat. §8-2-

---

[1] It's unclear why Count Five is not included in Count Three and how it is distinct from it. Nonetheless, in analyzing the claims, I will list them separately as plaintiff has done.

113, and that counts one, two, and four are all barred by the economic loss rule. *Id.* GAO filed

an opposition to this motion, ECF No. 42, and Mr. Kent filed a reply, ECF No. 45.

On July 18, 2018, GAO moved for partial summary judgment asking for a determination

of liability with the amount of damages to be determined separately. ECF No. 39. Mr. Kent

filed an opposition to that motion, ECF No. 44, and GAO filed a reply, ECF No. 46. Mr. Kent

then filed, with the Court's permission, a sur-reply. ECF No. 49. Both motions for summary

judgment have been fully briefed and are ripe for review.

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

moving party has the burden to show that there is an absence of evidence to support the

nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving

party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. A

dispute about a fact is material "if under the substantive law it is essential to the proper

disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)

(citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A material fact is genuine if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable

inferences there in the light most favorable to the party opposing summary judgment. *Concrete*

*Works of Colo., Inc*. v. *City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## III. ANALYSIS

Defendant claims that the noncompetition provision of the Employment Agreement

between Mr. Kent and GAO are void and unenforceable under Colorado law; that he never

misappropriated confidential or trade secret information; and that the tort and statutory claims are barred by the economic loss rule.  Plaintiff claims that, beyond any genuine dispute as to any material fact, Mr. Kent misappropriated confidential and trade secret information in violation of his contractual, tort, and statutory obligations, and that he violated the non-solicitation agreement of his contract.  After reviewing the briefings and applicable law I grant defendant's motion for summary judgment on Count Four, tortious interference with business relationships.  Because genuine disputes of material fact remain, I deny defendant's and plaintiff's motions for summary judgment on all other counts.

### A.  Enforceability of Employment Agreement ¶4 "Non-Competition and Non-Interference."

The first issue in determining the enforceability of the noncompetition clause in the Employment Agreement is determining what law applies.

#### 1) Does Tennessee or Colorado Law Apply?

Mr. Kent's Employment Agreement provides that it "will be interpreted and enforced in accordance with the laws of the State of Tennessee."  ECF No. 1-1 at ¶13.  In his motion Mr. Kent does not address the choice of law issue and appears to assume that Colorado law applies.  ECF No. 37 at 2, 6, 12.  GAO responds that Mr. Kent overlooked the Tennessee choice of law provision but then argues that the agreement is enforceable under Colorado law anyway.  ECF No. 42 at 2.

In its motion GAO argues that Tennessee law applies.  ECF No. 39 at 13.  In response Mr. Kent argues that the Court should apply Colorado law notwithstanding the choice of law provision in the agreement.  ECF No. 44 at 8.  He adds that the noncompetition and non-solicitation clauses are unenforceable under Tennessee law in any event.  *Id.* at 9.

#### a)  Did GAO Waive Its Right to Enforce the Choice of Law Clause?

First, Mr. Kent argues that GAO has waived its right to enforce the choice of law provision in the Employment Agreement. In addition to providing that it will be interpreted and enforced in accordance with the laws of the State of Tennessee, the Employment Agreement also provides that the "[e]mployee hereby consents to the venue and jurisdiction of the courts of competent jurisdiction, state and federal, situated in Nashville, Davidson County, Tennessee in any action brought in connection with this Agreement." ECF No. 1-1 at ¶13. Mr. Kent contends that this paragraph is meant to be construed as a whole so that Tennessee law will be applied when the case is tried in Tennessee. ECF No. 44 at 8. He argues that GAO, in filing suit in Colorado and waiving the right to sue in Tennessee, has also waived the choice of law provision. *Id.* Mr. Kent does not cite any law that suggests that a party waives choice of law when it waives choice of forum. I too have not found any law on this point.

On the other hand, GAO cites a Colorado Court of Appeals case that held that a party waives choice of law where it fails to raise the issue before the trial court rules on dispositive issues relying on the disputed state law. *Shoen v. Shoen*, 2012 COA 207, ¶13, 292 P.3d 1224, 1227. GAO argues that because it has met this standard, it could not have waived choice of law. However, that case addresses when a party waives the right to appeal the issue of choice of law applied by a trial court. It does not address whether a party waives their right to enforce a choice of law provision in a contract by not seeking to enforce other rights in the contract.

Interpreting the plain language of the contract, I conclude that the Employment Agreement does not indicate that both the choice of forum and the choice of law must be enforced for either to be enforced. The contract does not indicate that Tennessee is the only forum where an action may be brought to enforce the agreement. Instead, it states that Mr. Kent consents to the jurisdiction of courts in Tennessee. A reasonable reading of this sentence is that

Tennessee is an appropriate forum, but not necessarily the only appropriate forum. Therefore, even reading the choice of law and choice of forum sentences together, it seems consistent with the plain language of paragraph 13 for GAO to sue in a forum other than Tennessee, as long as that forum has jurisdiction over Mr. Kent. And GAO can also enforce the choice of law provision stating that the Agreement will be governed by the laws of the State of Tennessee. I conclude that GAO did not waive its right to invoke the choice of law provision. The question still remains as to whether this choice of law provision governs the enforceability of the noncompetition and non-solicitation clauses of the Employment Agreement.

      b)  <u>Under Colorado Choice of Law Principles, Which Law Applies?</u>

This case is before the Court on diversity jurisdiction. A federal district court sitting in diversity must apply the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Therefore, I will apply Colorado choice of law principles in this case. Colorado choice of law principles on this issue are consistent with the Restatement (Second) of Conflict of Laws §187 (1971). *See Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 14, 351 P.3d 493, 497 (citing *Hansen v. GAB Bus. Services, Inc.,* 876 P.2d 112, 113 (Colo.App.1994)). Section 187 states in relevant part:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied ... unless ... (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws §187(2). "In other words, Colorado courts will enforce contractual choice of law provisions unless a party can prove the twin requirements of § 187." *Haggard v. Spine*, No. 09-CV-00721-CMA-KMT, 2009 WL 1655030, at *3 (D. Colo.

June 12, 2009) (referring to the elements of "materially greater interest" and "fundamental policy").

Absent a choice by the parties, Colorado law would govern here. Thus, the remaining questions are (1) whether Colorado has a materially greater interest than Tennessee in determination of the enforceability of the restrictive covenants and (2) whether the application of Tennessee law would be contrary to a fundamental public policy of Colorado.

Here, Colorado has a materially greater interest than Tennessee in determining whether ¶4 of the Employment Agreement is enforceable. This agreement was to be performed in Colorado, the breach of the agreement is alleged to have occurred in Colorado, and the defendant is a resident of Colorado with his sole place of work in Colorado. More importantly, the non-solicitation agreement between Mr. Kent and GAO restricted competition in Mr. Kent's sales territory, Colorado, so that the effects of noncompetition resulting from this agreement would be felt in Colorado, not Tennessee. *See King v. PA Consulting Grp., Inc.*, 485 F.3d at 586-87 (finding that Colorado had a greater material interest in determining whether a noncompetition provision was enforceable where the individual who this agreement was being enforced against lived and worked in Colorado); *Elec. Distributors, Inc. v. SFR, Inc.*, 166 F.3d 1074, 1084 (10th Cir. 1999) (finding that Utah had materially greater interest in determining the validity of a covenant not to compete where it prohibited a Utah resident from employment in his industry within the entire state of Utah).

Next, I must consider whether application of Tennessee law to the noncompetition provision would be contrary to a fundamental public policy of Colorado. The 10th Circuit highlighted in *King* that Colorado has a fundamental policy of voiding noncompetition provisions that do not fall within one of the statutory exceptions. 485 F.3d at 586-87; *see also*

*DBA Enters. v. Findlay*, 923 P.2d 298, 302 (Colo. App. 1996) ("Covenants not to compete, with some narrow exceptions, are contrary to the public policy of Colorado and are void."). Colorado only permits four narrow exceptions to its ban on covenants not to compete: those for the purchase and sale of a business, for the protection of trade secrets, for recovery of training and education costs for an employee who served for less than two years, and for executive or management personnel.

Tennessee's rule is the opposite - restrictive covenants are enforceable if they are reasonable. *See Vantage Technology, LLC v. Cross,* 17 S.W. 3d 637, 644 (Tenn. Ct. App. 1999). These are two different standards for the permissibility of restrictive covenants. In *Haggard v. Spine*, the District of Colorado held that where Pennsylvania law follows the rule of reasonableness in determining the enforceability of a covenant not to compete, the "distinctions between Colorado and Pennsylvania law regarding the burden of enforceability are critical and they reflect that application of Pennsylvania law in this case may violate the fundamental public policy of Colorado." 2009 WL 1655030, at *4. As a result, the court applied Colorado law.

Similarly here, because Tennessee's standard for enforcing a noncompetition agreement is one of reasonableness, and this is markedly different than Colorado's standard, the application of Tennessee law could violate the fundamental public policy of Colorado. Therefore, both because the application of Tennessee law on this question would be contrary to a fundamental public policy of Colorado, and because Colorado has a materially greater interest in the resolution of this issue, I conclude that Colorado law applies.

2) <u>Is ¶4 of Employment Agreement Enforceable under Colorado Law?</u>

Colo. Rev. Stat. § 8-2-113 provides "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for an employer shall be void" unless that covenant fits into one of four defined exceptions. Colorado law treats non-solicitation clauses as covenants not to compete. *See, e.g., Saturn Systems, Inc. v. Militare*, 252 P.3d 516 (Colo. App. 2011).

There are two clauses in the employment agreement that are covenants not to compete. First, ¶4(a) states that Mr. Kent agrees that for a period of two years after leaving GAO, he will not "compete against the Company in a sales or sales management position, or otherwise engage in, directly or indirectly . . . in, the marketing and selling of products and services on school campuses and to schools, school organizations, groups or clubs, civic groups or other organizations, with the intent of fund raising, which are located within the Territory or Territories assigned to Employee under this Agreement or under prior like Agreements of the parties." ECF No. 37, Exhibit 1, at ¶4. Similarly, the next paragraph prohibits Mr. Kent from soliciting within any of his assigned territory "any account, customer or sponsor of [GAO] whom [Mr. Kent] . . . sold and serviced . . . whether or not such accounts, customers or sponsors were made known to Employee during his/her employment with Company." *Id.* at ¶5.

These two provisions would be unenforceable under Colorado law unless they fit into a statutory exception. The only exception that applies here is the exception for a contract for the protection of trade secrets. Colo. Rev. Stat. § 8-2-113. For this Employment Agreement to be a contract aimed at protecting trade secrets, a trade secret must exist. *See Porter Indus., Inc. v. Higgins*, 680 P.2d 1339, 1342 (Colo. App. 1984).

Under the Colorado Uniform Trade Secrets Act, a trade secret is defined as:

[T]he whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

Colo. Rev. Stat. § 7–74–102(4). The factors to consider in recognizing a trade secret include (1) the extent to which the information is known outside the business, (2) the extent to which it is known to those inside the business, *i.e.,* by the employees, (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information, (4) the savings effected and the value to the holder in having the information as against competitors, (5) the amount of effort or money expended in obtaining and developing the information, and (6) the amount of time and expense it would take for others to acquire and duplicate the information. *Porter Industries, Inc., v. Higgins,* 680 P.2d 1339 (Colo.App.1984).

What constitutes a trade secret is a question of fact for the trial court. *Network Telecommunications, Inc. v. Boor–Crepeau*, 790 P.2d 901 (Colo.App.1990). Mr. Kent and GAO dispute whether the customer lists, contact information for group sponsors, customer and account information and other things Kent allegedly used in his employment after leaving GAO are trade secrets. Because whether the noncompetition and non-solicitation clauses are enforceable depends on whether a trade secret exists, this issue cannot be resolved at the summary judgment stage.

However, Mr. Kent argues further that whether or not there is a trade secret, this agreement is facially invalid because Colorado law requires a restrictive covenant designed to protect trade secrets to be narrowly drafted. *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 526 (Colo. App. 2011). "For a covenant not to compete to fit within the trade secret exception to §8-

2-113, the purpose of the covenant must be the protection of trade secrets, and the covenant must be reasonably limited in scope to the protection of those trade secrets." *Gold Messenger, Inc. v. McGuay*, 937 P.2d 907, 910 (Colo. App. 1997). In construing a contractual provision to determine its enforceability, a court's primary job is to effectuate the intent of the contracting parties according to the plain language and meaning of the contract. *Albright v. McDermond,* 14 P.3d 318, 322 (Colo.2000).

Mr. Kent argues that the noncompetition and non-solicitation provisions, ¶4(a) and ¶4(b), in the Employment Agreement are not tailored to protecting trade secrets. If Mr. Kent is correct, then the noncompetition provisions, ¶4(a) and ¶4(b), could be held unenforceable even if the items in dispute are held to be valuable trade secrets. He argues first that because other parts of the agreement already protect trade secrets, these separate general restrictive covenant paragraphs should not be read to serve that purpose as well. He points to ¶5(a) and ¶5(b) in the Employment Agreement which protect trade secrets and confidential information. Another clause, ¶5(c), also prevents Kent from disclosing any trade secrets or confidential information for a period of seven years following the termination of the Employment Agreement.

For support, Mr. Kent points to *Colorado Accounting Machines, Inc. v. Mergenthaler* where the Colorado Court of Appeals held that where a trade-secret nondisclosure provision adequately protected plaintiff's interests, and because a separate restrictive covenant provision was not limited to enhancing this protection, the restrictive covenant provision was invalid. 609 P.2d 1125, 1126 (Colo. App. 1980). On the other hand, in *Saturn Sys., Inc. v. Militare*, the Colorado Court of Appeals found that the plain language of an employment agreement showed that a non-solicitation clause was designed to protect its client lists, sales materials and proprietary information, thereby expressing an intent to prohibit former employees or from using

trade secrets to solicit former clients. 252 P.3d 516, 527 (Colo. App. 2011). The Colorado Court

of Appeals found that this non-compete clause was different than the unenforceable one in

*Colorado Accounting* because it did not exist as a separate provision with a separate purpose

than the nondisclosure clause; rather, it was contained within a single confidentiality provision of

an Employment Agreement. This caused them to "read the plain language of the non-solicitation

clause . . .as serving the valid purpose of protecting Saturn's trade secrets." *Id.* at 528.

Using these cases, Mr. Kent argues that the restrictive covenant provisions do not

mention any confidential information or trade secrets and are not contained within any clause

aimed at protecting trade secrets. Instead they exist in a section titled "Non-Competition and

Non-Interference," apart from the section titled "Non-Disclosure of Information." Moreover,

trade secrets and confidential information are not referred to anywhere in the "non-competition"

section. There is a hint of the purpose of the non-competition clause in paragraph 4(d) where the

parties agree that the noncompetition and non-solicitation provisions "represent fair, necessary

and reasonable means by which the Company may protect its business, personnel and property."

But the protection of business, personnel and property in general is not one of the narrow

grounds upon which Colorado law permits the enforcement of non-compete agreements absent a

trade secret.

However, GAO argues that the "non-competition" section should be read in conjunction

with the "non-disclosure of information" section. Paragraph 5(c) states that "the Company's

trade secrets and other confidential information are legally protected property interests solely of

the Company." Read together with paragraph 4(d), this shows that one purpose of the

noncompetition agreement was to protect trade secrets and other confidential information.

Effectuating the intent of the Employment Agreement as a whole would require reading these

provisions together.  *See USF&G v. Budget Rent-A-Car*, 842 P.2d 208, 213 (Colo. 1992) ("The meaning of a contract is found by examination of the entire instrument and not by viewing clauses or phrases in isolation.")  I agree that by reading the contract as a whole, the noncompetition clauses are at least in part aimed at protecting confidential information.

In determining whether a noncompetition covenant fits within the "trade secrets exception" of § 8.2.113(2), Colorado courts apply a two-prong test: "[t]he trial court must first examine the factual situation to determine whether a restrictive covenant is justified at all," in other words, if there is a trade secret.  *Mgmt. Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763, 766 (Colo. App. 1988). "The trial court must then examine the specific terms of the noncompetition clause to determine the reasonableness of their effect."  *Id.*  I've already determined that the first prong is a disputed question of fact for trial.

As for the second prong, in *Mgmt. Recruiters of Boulder* the Court of Appeals upheld a trial court's finding that a noncompetition clause was reasonable on the basis that the trial court narrowly construed the restrictive covenant to ensure that the restrictions were limited to protecting trade secrets.  *Id.* at 766.  For example, the trial court, in interpreting a one-year restriction on contact with any "candidate," held that this only prohibited plaintiff from contacting candidates with whom he had actual contact, not any of the approximately 10,000 "candidates" in the files to which he had access.  *Id.*  I find this approach to resolving a potentially overbroad noncompetition covenant instructive.

Mr. Kent points to the breadth of the restrictive covenants in the Employment Agreement to demonstrate that they are not narrowly tailored to protecting trade secrets.  As examples, Mr. Kent highlights that ¶4(a) prohibits even indirect ownership in a competing business and prohibits the solicitation of customers Mr. Kent has not contacted in several years.  However, I

don't think that the noncompetition and non-solicitation clauses should be held void as a matter of law at the summary judgment stage where I have not yet determined what trade secrets it is aimed at protecting and where, if overbroad, a limiting construction of these clauses could cabin them to the protecting of trade secrets.

3) Collateral Estoppel in Proving Damages.

Lastly, Mr. Kent argues that even if the Court finds that the covenants are enforceable, GAO is estopped from litigating a breach of noncompetition and non-solicitation clauses in the contract. To prevail on a claim for breach of noncompetition and non-solicitation clauses, the injured party must show (1) the existence of an enforceable covenant; (2) nonperformance and/or conduct amounting to a breach of the covenant; and (3) damages resulting from the breach. *Life Care Ctrs. Of Am. V. Charles Town* Ass'n, 79 F.3d 496, 514 (6th Cir. 1999). Mr. Kent points to a case GAO brought against a former employee claiming breach of noncompetition and non-solicitation clauses of the contract. In that case, a Tennessee Court of Appeals held that GAO could not show with the requisite certainty that it had lost profits. *Great Am. Opportunities, Inc. v. Patterson*, No. M201602034COAR3CV, 2018 WL 1678077, at *27 (Tenn. Ct. App. Apr. 6, 2018). On the testimony presented in trial, the Tennessee Court of Appeals determined that GAO could not prove lost profits because GAO anticipated the attrition of clients anytime a representative moved to a different employer, even without a breach of contract, and its program agreements with customers were not binding. *Id.* Mr. Kent argues that this case bars the relitigation of whether GAO can establish damages, which means it cannot prevail on a claim of breach of a noncompetition contract.

The doctrine of issue preclusion bars litigation of previously decided issues in certain circumstances. The party seeking to assert issue preclusion to bar relitigation of an issue must show:

> (1) the issue is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Villas at Highland Park Homeowners Ass'n, Inc. v. Villas at Highland Park, LLC*, 2017 CO 53, ¶ 29, 394 P.3d 1144, 1152. GAO argues that the first prong of issue preclusion is not met. It argues that *Patterson* did not raise an identical issue because the customers serviced by Patterson (based in Georgia and Tennessee) are materially different than those serviced by Kent (Colorado). ECF No. 46 at 4. GAO argues that the holding in *Patterson* was a factual finding based on circumstances unique to that case, and the Tennessee Court of Appeals did not hold that all lost profits in the fundraising industry were incalculable. As support, GAO points to *Great American Opportunities Inc. v. Cherrydale Fundraising, LLC*, where a Delaware Chancery Court awarded damages to Great American based on the value of revenue generated by their former employees for Cherrydale's tortious interference with Great American employees' restrictive covenants. 2010 WL338219, at *27 (Del. Ch. Jan. 29, 2010).

In determining whether an identical issue is litigated, a change in facts may render preclusion inapplicable in some contexts but not in others. "[T]he question is whether the change in facts matters in light of the elements needed to prove a party's claims." *Bristol Bay Prods., LLC v. Lampack*, 2013 CO 60, ¶ 24, 312 P.3d 1155, 1160 (citing 18 Moore's Federal Practice § 132.02[2][e]). Thus, the question of whether the issues are identical turns on whether the differences in customers and region that GAO highlights are relevant considering the

elements it must prove to prevail on its breach of contract claim. I find that the specific customers and circumstances are relevant to proving damages, and that the issue of damages here is not identical to the issue GAO litigated in *Patterson*. Therefore, GAO is not estopped from bringing a claim for breach of a noncompetition contract against Mr. Kent.

In sum, because the enforceability of the noncompetition and non-solicitation provisions, ¶4(a) and ¶4(b), depend on a dispute of material fact, the existence of trade secrets, I deny both plaintiff and defendant's motions for summary judgment on Count Three, Breach of Contract, and Count Five, Breach of Contract – Non-Solicitation and Non-Interference.

### B. Economic Loss Rule (Counts One, Two and Four).

Defendant argues that the claims for violation of the federal Defend Trade Secrets Act (DTSA), violation of the Colorado Uniform Trade Secrets Act (CUTSA) and tortious interference with contracts or prospective contracts are all barred by the "economic loss rule," a Colorado Supreme Court rule. The economic loss rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law. Economic loss is defined generally as damages other than physical harm to persons or property." *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).[2] The purpose of the economic loss rule is to "maintain a distinction between contract and tort law." *Id.* at 1262.

Two conditions must be met for the economic loss rule to apply. First, the duty must arise from a source other than the contract. Second, the duty must not also be a duty imposed by the contract. *Makoto USA, Inc. v. Russell*, 250 P.3d 625, 627 (Colo. App. 2009) (citing *Haynes*

---

[2] Both parties use Colorado law to analyze whether the economic loss rule precludes any claims. This makes sense to me as the contract invokes Tennessee law only as to the interpretation and enforcement of the contract. The choice of law clause then shouldn't apply to an issue of whether the economic loss rule would preclude a claim that does not arise from the contract, like a tort or statutory claim, altogether.

*Trane Service Agency, Inc. v. American Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009). If

the duty is also "memorialized in the contracts, it follows that the plaintiff has not shown any

duty independent of the interrelated contracts and economic loss rule bars the tort claim." *BRW,*

*Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 74 (Colo.2004).

Mr. Kent argues that the claims for misappropriation of trade secrets under federal and

state statutes and the claim for tortious interference with business relationships are all barred by

the economic loss rule. I conclude that GAO's tort claim is barred by the economic loss rule, but

that its statutory claims are not.

    1)  <u>Count Four: Tortious Interference with Business Relationships.</u>

In Count Four, GAO alleges tortious interference with business relationship by Mr. Kent.

The allegations that form the basis of this claim are that Mr. Kent was aware of current and

prospective contractual arrangements between Plaintiff and its customers and prospective

customers, and that he wrongfully interfered with these to cause GAO to lose profits. ECF No. 1

at ¶109-114. Essentially, GAO claims that Mr. Kent is soliciting its customers and accounts in

Colorado and inducing them to divert fundraising business away from GAO. ECF No. 1 at ¶60.

This conduct also is the basis of GAO's breach of contract claim – that Mr. Kent is soliciting its

customers and accounts in Colorado in violation of his 2002 Employment Agreement which

requires he not do so for two years following his resignation. *Id.* at ¶58-61.

The Colorado Court of Appeals has held that a claim for tortious interference with

business relationships was barred by the economic loss rule. *Parr v. Triple L & J Corp.*, 107

P.3d 1104 (Colo. App. 2004). In that case the landlord had a duty under the lease not to

unreasonably withhold consent to an assignment, and the landlord interfered with the plaintiff's

prospective contract with the third-party buyer by unreasonably withholding consent to the

assignment. *Id.* at 1108 ("If a duty is found in the contract, as here, it is improper further to analyze the existence of an independent tort duty in determining whether an economic loss may be recovered.")

Here, the Employment Agreement between GAO and Mr. Kent imposes upon Mr. Kent the same duty to not interfere with GAO's current or prospective customers as the duty underlying the tort for interference with business contracts. Therefore, defendant's motion for summary judgment on Count Four is granted, and plaintiff's motion on Count Four is denied.

2) Statutory Claims.

The economic loss rule cannot be applied to preclude a statutory claim if the legislature intended the statute to provide a statutory remedy in addition to a contractual one. *Makoto USA, Inc. v. Russell*, 250 P.3d 625, 629 (Colo. App. 2009) (holding that the economic loss rule barred a claim under Colorado's stolen property statute as there was no indication that the stolen property statute was intended to expand contractual remedies). At issue is whether the Defend Trade Secrets Act (DTSA) and the Colorado Uniform Trade Secrets Act (CUTSA) were intended to provide extra-contractual remedies.

Mr. Kent argues that the duty of confidentiality and nondisclosure of trade secrets contained in the Employment Agreement is identical to the duty imposed by the Colorado Uniform Trade Secrets Act and the federal Defend Trade Secrets Act. Turning first to the CUTSA, the statute states that "this article does not affect . . . contractual remedies, whether or not based upon misappropriation of a trade secret." Colo. Rev. Stat. § 7-74-108(2)(a). Other courts have interpreted this language to mean that the legislature intended to provide a statutory remedy under CUTSA in addition to any contractual remedy. *See, e.g., 23 Ltd. v. Jayson Lessing & Talent Factory Llc*, 2016 Colo. Dist. LEXIS 370, *5; *Wolfe Tory Med., Inc. v. C.R. Bard, Inc.,*

No. 2:07-CV-378TS, 2008 WL 541346, at *3 (D. Utah Feb. 25, 2008) (finding similar language in the Utah Uniform Trade Secrets Act to permit a plaintiff to simultaneously pursue a statutory trade secret misappropriation claim and a breach of contract claim). I agree with the reasoning in these cases and find that GAO's claim under the CUTSA is not barred by the economic loss rule.

GAO argues that in drafting the DTSA, Congress expressed an intent to model it after state statutes that follow the Uniform Trade Secrets Act. A House Report accompanying the referral of the bill that became Defend Trade Secrets Act suggests an intent to model the DTSA after similar state statutes. H.R. Rep. No. 114-529, at 2-5, 12-14 (2016) ("[t]he Act's definition of misappropriation is modeled on the Uniform Trade Secrets Act, versions of which have been adopted by 48 states."). Since the DTSA was enacted, some courts have applied similar reasoning and standards in the application of the DTSA as in the application of similar state statutes that follow the Uniform Trade Secret Act. *See, e.g., Brand Energy & Infrastructure Servs. v. Irex Contr. Grp.*, 2017 U.S. Dist. LEXIS 43497, *16-17 ("It is clear that Congress borrowed heavily from the UTSA and the states' trade secrets laws in drafting many (if not most) provisions of the DTSA. The enactment of the DTSA was not a response to an inherent inadequacy in the states' trade secrets laws. Rather, . . . Congress intended the DTSA to apply in substantially the same way as the states' trade secrets laws, but with a much broader geographic and jurisdictional reach.") (internal quotations and citations omitted).

Therefore, there is no reason to think that the DTSA was not intended to provide extra-contractual remedies where the CUTSA was intended to provide extra-contractual remedies. Accordingly, I find that the economic loss rule does not preclude statutory claims under either the DTSA and CUTSA.

Plaintiff argues that there remains no genuine dispute of material fact with regard to the CUTSA and DTSA claims so that summary judgment should be granted. ECF No. 46 at 4. However, Mr. Kent argues that the information at issue is not a trade secret, and therefore there was no violation of CUTSA and DTSA. I conclude that there remain genuine disputes over whether any information at issue is protected by trade secret law, and whether any information, if a trade secret, was ever misappropriated by Mr. Kent. Accordingly, I deny both plaintiff and defendant's motions for summary judgment on Counts One and Two.

## ORDER

For the reasons stated herein, the Court

1.  Denies ECF No. 37, plaintiff's motion for partial summary judgment; and

2.  Grants in part and denies in part defendant's motion for partial summary judgment, ECF No. 39. The motion is granted as to Court Four but is otherwise denied.

DATED this 22nd day of October, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge